IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DOUGLAS ALEXANDER CAREY,      )
                              )
      Plaintiff,          )
                              )
  v.                          )   Civil Action No. 18-62
                              )
COMMISSIONER OF SOCIAL SECURITY, )
                              )
      Defendant.          )

O R D E R

AND NOW, this 26th day of March, 2019, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision, denying Plaintiff's claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401 et seq., and denying Plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal

1

court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] Plaintiff argues, in essence, that the Administrative Law Judge ("ALJ") erred by: failing to give proper weight, in formulating Plaintiff's residual functional capacity assessment ("RFC"), to the medical opinion evidence provided by Plaintiff's treating physicians; failing to rely on the testimony of the vocational expert ("VE") in his decision; and failing to discuss certain evidence in his analysis. The Court disagrees and finds that substantial evidence supports the ALJ's findings as well as his ultimate determination, based on all the evidence presented, of Plaintiff's non-disability.

First, the Court finds no merit in Plaintiff's contention regarding the ALJ's decision not to give controlling weight to the opinion evidence provided by Plaintiff's treating physicians. It is well-established that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). "The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011). A treating physician's opinion is only entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (quoting 20 C.F.R. § 404.1527(c)(2)). "If, however, the treating physician's opinion conflicts with other medical evidence, then the ALJ is free to give that opinion less than controlling weight or even reject it, so long as the ALJ clearly explains [his or] her reasons and makes a clear record." Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 148 (3d Cir. 2007). A treating physician's opinion on the ultimate issue of disability is not entitled to any "special significance," and an ALJ is not required to accept it since the determination of whether an individual is disabled "is an ultimate issue reserved to the Commissioner." Smith v. Comm'r of Soc. Sec., 178 Fed. Appx. 106, 112 (3d Cir. 2006).

In the present case, the Court finds that the ALJ sufficiently explained his reasons for giving the opinions of Plaintiff's treating physicians less than controlling weight in his analysis. The ALJ did not fail to provide sufficient reasons for discounting those opinions, nor did he simply substitute his own lay analysis for the judgment of those physicians in formulating Plaintiff's RFC. Rather, the ALJ fulfilled his duty as fact-finder to evaluate those opinions, considering a number of factors, and in light of all the evidence presented in the record. See 20 C.F.R. §§ 404.1527, 416.927. In fact, the ALJ explained the weight that he was giving to the physicians' opinions only after engaging in an extensive discussion of the evidence of record, including Plaintiff's treatment records and other objective medical evidence, his reported symptoms, and discussion of his activities of daily living. (R. 17-25).

For example, Plaintiff contends that the ALJ failed to give sufficient consideration to the opinion of his treating cardiologist, Imad Domat, M.D., who suggested that Plaintiff had symptoms of chest heaviness that occurred 2-4 times per week, that after an angina episode he

had to rest for 5-30 minutes, that he could walk only ½ to one city block, that he could stand or walk less than 2 hours a day, that he needed a job that permits shifting positions at will from sitting, standing or walking, and that he was likely to have good and bad days. (Doc. No. 14, at 13; R. 526-29). The ALJ explained that he gave Dr. Domat's opinion little weight because it was "not supported by the overall evidence of record that shows improved chest pain with stent placement, and improved left shoulder impairment with corrective surgery." (R. 24). The ALJ also explained that the evidence did not show that Plaintiff had limitations in standing, walking, or sitting to the degree set forth by Dr. Domat. (R. 24). The ALJ concluded by stating that Dr. Domat did not set forth objective findings to support his opinion. (R. 24). Thus, the Court finds that the ALJ adequately explained his reasons for giving Dr. Domat's opinion little weight in his analysis.

With regard to Plaintiff's treating family physician, J. Todd Wahrenberger, M.D., Plaintiff argues that the ALJ failed to consider that the doctor opined that Plaintiff could rarely lift 10 pounds and occasionally less than 10 pounds, that he would be off task 25% or more of the day, and that he would miss more than 4 days of work per month. (Doc. No. 14, at 13; R. 531-34). In fact, the ALJ explained that he gave Dr. Wahrenberger's opinion little weight because the doctor based the limitations that he had found on Plaintiff's cardiac impairment and depression. (R. 24). The ALJ reasoned that the medical evidence did not show any discussion or treatment for depression, and the treatment history and objective findings did not support the extreme limitations including being 25% off task, being incapable of even low stress work, and being absent more than 4 days per month. (R. 24). The ALJ also noted that the evidence showed that Plaintiff's chest pain and shortness of breath improved after his stent placement, and that the treatment following his stent placement was minimal. (R. 24). Further, the ALJ explained that he gave Dr. Wahrenberger's opinion that Plaintiff could work no more than 20 hours per week little weight because the determination of whether a plaintiff is able to work is an issue reserved to the Commissioner. (R. 24). The Court finds that the ALJ's explanation for giving Dr.Wahrenberger's opinion little weight is therefore sufficient.

Plaintiff lastly contends that the ALJ failed to properly credit the statements of his treating orthopedic surgeon, Yram J. Groff, M.D., who opined in November 2016 (2 months after Plaintiff's shoulder surgery) that Plaintiff could do no work with his left upper extremity for at least 3 months, that he would likely have good days and bad days, and that he would miss about 2 days of work per month at that time. (Doc. No. 14, at 13; R. 647-51). The ALJ stated, however, that he gave Dr. Groff's little weight in determining Plaintiff's RFC because "it was rendered only a few months after [Plaintiff's] shoulder surgery and it is reflective of his condition at that time (no use of left arm for example)." (R. 25). The ALJ further explained that, after his surgery, Plaintiff "received physical therapy, and he is able to use his arm to perform personal care, prepare simple meals, shop and perform some household chores." (R. 25). The ALJ also acknowledged that, although Plaintiff "continues to have problems with his left arm (and occasional limitations are consistent with this), the record does not support an overall complete inability to use the left arm." (R. 25). Therefore, the Court finds that the ALJ properly explained his reasons for giving Dr. Groff's opinion little weight in his analysis.

Additionally, Plaintiff notes that the ALJ afforded great weight to state agency physician Khalid Malik, M.D., who conducted an examination in December 2014 but did not include any diagnosis of Plaintiff's left shoulder. (Doc. No. 14, at 16; R. 512-25). The Court notes, however, that the ALJ explained that he gave great weight to Dr. Malik's opinion "except for the manipulative limitations," and that he was therefore not simply adopting the opinion. (R. 24). The ALJ further detailed that the evidence showed that Plaintiff "clearly has limited use of the left upper extremity" and therefore that he had occasional reaching, handling, finger, and feeling limitations. (R. 24). Additionally, the ALJ explained that, since the evidence showed that Plaintiff had undergone stenting twice but continued to have some chest pain with shortness of breath, he found it proper to limit Plaintiff to less than a light range of work. (R. 24). The Court finds that the ALJ did not err in considering Dr. Malik's opinion along with the opinions of the other medical sources, that he properly tailored the RFC to include the limitations supported by the evidence, and that the ALJ did not err in ultimately giving Dr. Malik's opinion great weight in making his RFC determination. See SSR 96-6p, 1996 WL 374180 (July 2, 1996).

Therefore, the Court concludes that the ALJ thoroughly considered the evidence of record in evaluating the various medical opinions in this case, and that he adequately explained his reasons for giving those opinions the weight that he did. The Court thus finds that the ALJ did not err in giving the opinions of Dr. Domat, Dr. Wahrenberger, and Dr. Groff little weight in making his RFC determination.

Second, the Court finds that the ALJ did not err in finding that Plaintiff could perform work on a regular and continuing basis, despite certain testimony offered by the VE. In response to one of the ALJ's hypothetical questions at the administrative hearing—which included greater limitations than those ultimately included in his RFC—the VE testified that such an individual would be disabled if he or she had to be absent more than one day per month and if he or she were off task more than 15% of the time. Plaintiff argues that, because his physicians had opined that he would be limited as described in that question, the ALJ erred in not relying in the VE's response to such hypothetical and finding that there would be no jobs in the national economy that Plaintiff could perform.

While the hypothetical questions to the VE must accurately portray a claimant's impairments, such questions need only reflect those impairments that are adequately supported by the record. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). In this case, the ALJ properly posed a series of hypothetical questions to the VE, questions which contained a range of potential limitations because the ALJ had not yet formulated Plaintiff's RFC. Additionally, the ALJ explained early in the proceeding that there was a possibility that the hearing would need to be reconvened at a later date if—after he had had a chance to review the large number of additional medical records that he had received just before the hearing—he determined that additional testimony from the VE would be needed. (R. 36). In the end, however, after posing a number of hypothetical questions to the VE, the ALJ did not see a need for additional VE testimony because he relied upon responses by the VE that were given at the hearing that day.

Moreover, the Court finds that the hypothetical question upon which the ALJ eventually relied in his decision fully accommodated the limitations that were supported by the record (including the medical opinion evidence discussed, supra) and that were thus included in the RFC. Accordingly, the ALJ accounted for the limitations supported by the evidence of record when he asked the VE to assume an individual of Plaintiff's age, education and work experience who is limited to light work, with additional limitations including occasional reaching overhead and in all other directions with the left arm; occasional handling, fingering, and feeling with the left hand; occasional climbing ramps and stairs; never climbing ladders, ropes or scaffolds; occasional balancing, stooping, kneeling and crouching; never crawling; occasional exposure to weather, humidity and wetness, and dust, odors, fumes and pulmonary irritants; and no exposure to extreme cold or extreme heat. (R. 19, 72-74). Considering these limitations, the VE testified that such an individual would be able to perform the requirements of representative light work occupations such as counter clerk, account investigation, and furniture rental consultant, and the ALJ properly relied on these findings in concluding that Plaintiff is not disabled. (R. 26-27, 73-74).

Finally, Plaintiff contends that the ALJ erred in failing to discuss certain evidence in the course of his analysis. At the outset, the Court notes that an ALJ is not required to make reference to every piece of evidence in the record, as long as the Court can discern the basis for the ALJ's decision. See Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001); Knox v. Astrue, 2010 WL 1212561, at *7 (W.D. Pa. Mar. 26, 2010); Coccarelli-Yacobozzi v. Astrue, 2010 WL 521186, at *10 (W.D. Pa. Feb. 9, 2010). Nevertheless, the Court finds that the ALJ did not err in failing to discuss the evidence cited by Plaintiff, and that the ALJ sufficiently discussed and cited the relevant medical records and medical opinions in this case.

Specifically, Plaintiff first asserts that the ALJ failed to discuss adequately Plaintiff's testimony (without giving more detail) and the assessments of his treating physicians regarding whether he would be absent in excess of employers' allowances or would be able to tolerate the stressors associated with simple, routine work. As discussed at length, supra, the Court finds that the ALJ adequately addressed Plaintiff's treating physicians' opinions in this regard. Further, the Court finds that the ALJ properly discussed Plaintiff's testimony, along with the medical opinions and other evidence of record, in sufficient detail to allow meaningful judicial review. See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000).

As for addressing Plaintiff's ability to tolerate stressors, the ALJ noted that Plaintiff testified that he had never received mental health treatment from a specialist, nor did the medical evidence show any discussion or treatment for depression. (R. 22, 24). Moreover, the ALJ clearly explained that, although Dr. Wahrenberger indicated on his medical source statement that Plaintiff was incapable of even low stress work due to "cardiac and depression," a review of his treatment records "shows no actual diagnosis for depression, anxiety or any other mental health impairment." (R. 18, 534). The ALJ therefore determined that Plaintiff had no medically determinable mental health impairment. (R. 18). The ALJ further noted that, even if there were "sufficient evidence to establish a non-severe medically determinable impairment, [Plaintiff] has received no treatment and there is no evidence to establish that the claimant would have even mild limitations in any functional area." (R. 18).

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 13) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 15) is GRANTED.

s/ Alan N. Bloch<br>United States District Judge

ecf:            Counsel of record

---

Lastly, Plaintiff contends that the ALJ failed to discuss the impact of his heart condition causing a delay in his shoulder surgery, which "discounts the ALJ's findings that Dr. Groff's opinion is only an opinion of immediately after surgery." (Doc. No. 14, at 20). First, the ALJ did in fact explain in his decision both that Plaintiff had to wait for surgery because of his heart problems, and that Plaintiff had his left shoulder problem for two years. (R. 22). Regardless, this factor simply does not undermine the substantial evidence supporting the ALJ's decision to give Dr. Goff's opinion little weight because it was reflective only of Plaintiff's condition at the time shortly following his surgery, as discussed, supra.

As to any additional arguments mentioned summarily by Plaintiff in his brief, the Court finds that he has failed to establish how the ALJ's failure to consider properly any additional evidence of record constitutes reversible error.

In sum, after careful review of the record, the Court finds that substantial evidence supports the ALJ's evaluation of the medical opinions of Plaintiff's treating physicians and his decision as to the weight given to those opinions in determining Plaintiff's RFC. Moreover, the Court finds that the ALJ did not err in concluding that Plaintiff could perform work on a regular and continuing basis, despite the testimony offered by the VE. Additionally, the Court finds that the ALJ did not err in failing to discuss the relevant evidence of record in his decision. Accordingly, the Court affirms.